**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DON SUPINGER and | ) | Case No. 08-50735 |
| MARY ANN SUPINGER, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| BRUCE E. STRAUSS, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 08-4238 |
| | ) | |
| LATINA D. ISAACKS and | ) | |
| DOUGLAS C. ISAACkS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In this adversary, the Chapter 7 trustee, Bruce E. Strauss ("Trustee"), seeks to avoid and recover for the benefit of the estate certain real property the Debtors transferred to the Defendants – the Debtors' daughter and son-in-law – within four years of the date the Debtors filed their Chapter 7 bankruptcy petition. The central issue in the case is whether the Debtors received reasonably equivalent value in exchange for the property at the time of the transfer. The Trustee contends that the property was worth significantly more than the Debtors received for the property, and, therefore, the transfer is avoidable under 11 U.S.C. § 548 or Mo. Rev. Stat. §§ 428.005, *et seq*. The Debtors, on the other hand, argue that the property is, and has been for some time, in such disrepair that the its value at the time of the transfer was reasonably equivalent to, if not less than, the consideration the Debtors received in exchange for the property.

For the reasons stated below, the Court finds that the Debtors did not receive reasonably equivalent value for the property transferred to the Defendants. Accordingly, the Court will avoid the transfer for the benefit of the estate.

**BACKGROUND**

The Debtors' financial difficulties started long before they filed their Chapter 7 bankruptcy petition on September 30, 2008. In fall 2004 the Debtors, Don Supinger and Mary Ann Supinger, asked their daughter, Latina D. Isaacks, for a loan. Dutifully, Ms. Isaacks loaned her parents $2,500 with the understanding that they would pay her back when they could. Unfortunately, the $2,500 loan was not enough to solve the Debtors' financial troubles, and they soon contacted Ms. Isaacks, who was on active duty with the United States Air Force in Iceland at the time, to ask her for another loan. At some point in the discussions between the Debtors and Ms. Isaacks, the Debtors suggested that they structure the transaction as a sale of their home (the "Property") to Ms. Isaacks and her husband, Defendant Douglas Isaacks. Ms. Isaacks testified that she had no real interest in buying or living in the Property and that she had no idea how much it was worth. Ultimately, however, Ms. Isaacks agreed to the transaction – whether it was a loan or a sale – because she knew her parents were unable to pay their bills, which included legal bills related to a personal injury lawsuit pending against her father.[1] Accordingly, Ms. Isaacks wired $29,500 to the Debtors on January 4, 2005. Ms. Isaacks testified that her father decided on the $29,500 figure because that amount, plus the earlier $2,500 loan, was roughly equivalent to the amount the Debtors paid for the Property in 1976.

Although the parties now characterize the transaction as a sale of the Property, and the Defendants offered into evidence a bill of sale stating that the sale took place on January 4, 2005, the deed transferring the Property to Latina and Douglas Isaacks wasn't executed until January 3, 2007. It was recorded on January 5, 2007. Ms. Isaacks testified that she never saw or knew about a bill of sale until it was produced through discovery in this lawsuit.

The parties' differ greatly in their estimation of the Property's value, but there is little dispute that the Property is in severe disrepair and has been for some time. The Debtors currently live in the Property and have apparently lived there continuously from 1976, but the pictorial and testimonial evidence indicates that the property is barely habitable. The exterior walls are rotting and need to be repainted, the interior walls and floors have deteriorated to the point where the underlying structure is visible, there appears to be mold in the house, the basement has standing water, and the septic system is seeping sewage into the back yard. Ms. Isaacks testified that it has

---

[1] A $2 million judgment against Mr. Supinger was entered on July 12, 2007.

been in this condition since she left to join the Air Force approximately 12 years ago.[2]

The Defendants contend that the Property was essentially worthless at the time of the transfer (regardless of whether it occurred in 2005 or 2007) because the Property was in such disrepair. In support of this contention, the Defendants offered Mr. Isaacks's testimony that the Property had no value other than what might be attributable to the land, but Mr. Isaacks did not explain how he arrived at this conclusion and admitted that he has visited the Property only two or three times.

In contrast, the Trustee contends that the Property was worth $80,000 in 2005 and $75,000 in 2007, based on a retrospective appraisal performed by Thomas J. Pryor, a certified, professional appraiser. Mr. Pryor testified at trial that his valuation of the property took into account the fact that it was in "fair to poor" condition, the lowest rating he gives to habitable properties.

## DISCUSSION

**A.    Avoidance of the Transfer.**

The Trustee seeks to avoid the Debtors' transfer of the Property to the Defendants under 11 U.S.C. § 548(a). Section 548(a) provides that a trustee may avoid the transfer of an interest of a debtor (and joint debtor) made within two years[3] before the date of the filing of the debtor's bankruptcy petition if the transfer (1) was made with the actual intent to hinder, delay, or defraud a creditor, or (2) the debtor was insolvent on the date of the transfer and the debtor received less than reasonably equivalent value for the transfer.[4]

The Trustee does not contend, nor does the evidence show, that the Debtors transferred the Property to the Defendants with the actual intent to hinder, delay, or defraud the Debtors' creditors. Rather, the Trustee seeks to avoid the transfer on the grounds that the Debtors were insolvent on the date they transferred the Property to the Defendants and that they received less than reasonably equivalent value for the Property.

---

[2] Ms. Isaacs went so far as to testify that the deplorable condition of the Property was one reason she joined the Air Force.

[3] Mo. Rev. Stat. §§ 428.005, et seq. effectively extends this "look-back" period to four years prior to the petition date.

[4] 11 U.S.C. § 548(a)(1) and (2).

The Debtors have not disputed the allegation that they were insolvent on the date of the transfer – whether it occurred in January 2005 or 2007 – and the evidence showed that they were in fact insolvent on both of those dates. Ms. Isaacks testified that the Debtors needed the money they received from the Defendants to pay their bills. Therefore, as noted above, the central issue in this case is whether the Debtors received reasonably equivalent value for the Property.

Before delving into that issue, however, there is a predicate issue – largely ignored by the parties – that the Court must resolve before it can determine whether the Debtors received reasonably equivalent value in exchange for the Property. That issue is: When did the transfer of the Property occur – in January 2005 when the Defendants wired money to the Debtors, or in January 2007 when the Debtors executed and recorded the warranty deed?

Based on the documentary and testimonial evidence adduced at trial, the Court finds that the transfer occurred in January 2007. First, the transfer of property can be accomplished only through the delivery and acceptance of a deed.[5] The deed transferring the Property from the Debtors to the Defendants was not executed until January 2007. Second, to the extent the bill of sale offered into evidence might have effected a transfer of the Debtors' interest in the Property, equitable or otherwise, the Court does not believe that the bill of sale was executed in January 2005. Ms. Isaacks testified that she never knew about and had never seen the bill of sale until it was produced through discovery in this lawsuit. And neither Debtor offered any testimony to corroborate that the bill of sale was, in fact, executed in January 2005.

Placing the transfer in January 2007 undermines the Defendants' argument that they provided reasonably equivalent value for the Property, regardless of the ultimate valuation of the Property, because in January 2007 the Debtors did not receive *anything* in exchange for the property. At most, the Debtors might have had an argument that they satisfied an antecedent debt by transferring the Property to the Defendants at that time, but the Debtors did not make that argument or offer evidence at trial which would support it. From a legal standpoint, the Debtors' transfer of the Property to the Defendants in January 2007 constituted no more than a gift, wholly unsupported by consideration. Consequently, that transfer is avoidable under § 548(a)(2).

---

[5] *Underwood v. Gillespie*, 594 S.W.2d 372, 374 (Mo. Ct. App. 1980).

Even if the Court were to find that the transfer of the Property occurred contemporaneously with Defendants' wire transfer of $29,500 to the Debtors in January 2005, the Debtors still did not receive reasonably equivalent value for the Property.

"The concept of reasonably equivalent value is a means of determining if the debtor received a fair exchange in the marketplace for the goods transferred. Considering all the factors bearing on the sale, did the debtor receive fair market value for the property?"[6] The evidentiary and testimonial evidence adduced at trial supports a finding that the Property was worth $80,000 in January 2005. This finding rests largely on the Uniform Residential Appraisal Report submitted into evidence by the Trustee and the testimony of its author, Thomas Pryor.

The Defendants (and the Debtors) vehemently deny that the property was worth $80,000 in January 2005 (or $75,000 in January 2007), but they never offered any credible evidence to controvert Mr. Pryor's conclusions. The Defendants submitted copious evidence of the *condition* of the property, but they offered little or no evidence as to the *value* of the property. Mr. Isaacks testified that the Property might be worth as much as $29,000 to $30,000 based on the value of the land, but he could not explain how he arrived at that valuation, and he admitted that he has only seen the Property two or three times. In essence, the Defendants' argument rested on the premise that the Property was in such a state of disrepair that it just had to be worthless. And they expected the Court to value the Property on that premise. It is not the Court's province to make such valuations, however.

It is the province of the Court to assess the credibility and reliability of expert testimony.[7] And the Court finds Mr. Pryor's testimony that the Property was worth $80,000 in January 2005 (and $75,000 in January 2007) credible and reliable. The Defendants stipulated to Mr. Pryor's credentials as an expert witness qualified to give an opinion on the value of the Property. Mr. Pryor conducted a retrospective appraisal using a generally accepted methodology – a comparison sales approach – and memorialized his findings in a "Uniform Residential Appraisal Report." Upon review of the report and consideration of Mr. Pryor's testimony, the Court finds that the sales used

---

[6] *Jacoway v. Anderson* (*In re Ozark Rest. Equip. Co., Inc.*), 850 F.2d 342, 344-45 (8th Cir. 1988).

[7] *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151, 119 S.Ct. 1167, 1176,143 L.Ed.2d 238 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.").

in the report were indeed comparable and that he made appropriate adjustments to compensate for the condition of the property. Therefore, the Court accepts Mr. Pryor's conclusion that the Property was worth $80,000 in January 2005 (and $75,000 in January 2007), and based on this conclusion, the Court finds that the Debtors did not receive reasonably equivalent value for the Property. Accordingly, the transfer of the Property is avoidable under § 548(a)(2).

**B.    The Appropriate Remedy.**

Having determined that the transfer is avoidable under 11 U.S.C. § 548(a)(2), the Court must now determine the appropriate remedy.

**1.    The Trustee is entitled to recover the Property.**

Under 11 U.S.C. § 550(a), a trustee may recover for the benefit of the estate the property transferred or a judgment against the transferee for the value of the property.[8] The Trustee in this case seeks a judgment against the Defendants for the value of the property. The discretion to determine which remedy is appropriate, however, resides with the Court,[9] and the Court finds that the circumstances and the equities of the case favor a return of the Property. There have been no intervening or subsequent transfers of the Property since it was transferred to the Defendants, so a transfer of the Property to the bankruptcy estate can be easily accomplished by voiding the deed transferring the Property from the Debtors to the Defendants; there is no evidence that the Property has declined in value since 2007 (or declined significantly since 2005); and a judgment against the Defendants for the value of the property would be unnecessarily punitive. The uncontroverted testimony indicates that the Debtors used the money they received from the Defendants to pay creditors, not for some improper or wasteful purpose.

**2.    The Defendants are not entitled to a lien against the Property for the consideration (allegedly) paid for it.**

---

[8] 11 U.S.C. § 550(a).

[9] *Halverson v. Le Sueur State Bank* (*In re Willaert*), 944 F.2d 463, 464 (8th Cir. 1991).

Under § 548(c), a transferee who takes for "value and in good faith" is entitled to a lien against the property transferred to the extent of the value given to the debtor in exchange for the transfer. The Defendants argue that they are entitled to a lien against the property for the amount they allegedly paid for the Property ($29,500) because they took the Property for "value and in good faith." This argument fails for two reasons.

First, as discussed above, the transfer of the Property in January 2007 did not take place contemporaneously with the Defendants' transfer of $29,500 in January 2005; therefore, the Defendants cannot be found to have given value for the transfer.

Second, and perhaps more importantly, the Defendants did not take the Property in good faith because they knew – in January 2005 and 2007 – that the Debtors were insolvent. For purposes of § 548(c), a transferee does not act in good faith if he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.[10] Whether a transferee has such knowledge is determined objectively, with a focus on what a transferee knew or should have know, not on the transferee's actual knowledge.[11] In this case, the Court does not need to rely on the whether the Defendants had constructive knowledge of the Debtors' insolvency because Ms. Isaacks admitted that she had actual knowledge of their insolvency; her purpose in sending the Debtors $29,500 was to help them pay their past-due bills.

Therefore, the Debtors' request under § 548(c) for a lien against the Property will be denied.

## CONCLUSION

For the reasons stated above, the Court will avoid the transfer of the Property from the Debtors to the Defendants. Accordingly, the General Warranty Deed dated January 3, 2007, and recorded with the Platte County, Missouri Recorder in Book 1096 at page 372 is void and without effect.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

**ENTERED** this 7th day of October 2009.

---

[10] *Doeling v. Grueneich* (*In re Grueneich*), 400 B.R. 688, 693 (B.A.P. 8th Cir. 2009)

[11] *Id.*

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

Copies to:
Bruce E. Strauss
William M. Quitmeier