## LICENSE AGREEMENT

**THIS LICENSE AGREEMENT** (the "Agreement"), is made and entered into as of December 27, 1996, by and among **INTERSTATE BRANDS CORPORATION**, a Delaware corporation ("IBC"), **LEWIS BROTHERS BAKERIES INCORPORATED**, a Missouri corporation ("LBB"), and **CHICAGO BAKING COMPANY**, a wholly-owned subsidiary of LBB and an Illinois corporation ("CBC") (LBB and CBC are collectively referred to as the "Licensee"). Terms used herein without definition shall have the meanings set forth in the Asset Purchase Agreement by and between IBC and Licensee as of the date hereof (the "Purchase Agreement").

### WITNESETH:

**WHEREAS**, IBC is the owner of or has the right to use and sublicense to Licensee the trademarks, labels and logos and registrations thereof set forth in Schedule A hereto (the "Chicago Trademarks") and has the right to use the labels and logos set forth on Schedule B hereto (the "Sunbeam Trademarks") (collectively, the Chicago Trademarks and the Sunbeam Trademarks are referred to as the "Trademarks"); and

**WHEREAS**, in order to comply with the Final Judgment entered in the <u>United States of America v. Interstate Bakeries Corporation and Continental Baking Company</u> in the United States District Court in the Northern District of Illinois, Eastern Division; Civil Action No. 95C4194 (the "Final Judgment"), IBC has agreed to extend a license to Licensee and Licensee desires to make use of the Trademarks subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual agreements contained herein, the parties hereby agree as follows:

### ARTICLE I

### GRANT OF LICENSE

**Section 1.1 Grant.**

(a)  Subject to Section 1.2 below, and effective on the Closing Date, IBC grants to Licensee, and Licensee hereby accepts, a perpetual, royalty-free, assignable, transferable, exclusive (but in no event sublicensable) license to use the Chicago

0251711.02

Trademarks in connection with the manufacture, sale, distribution, advertising and promotion of fresh and returned bread, buns, bread rolls and other bakery products, but only in that portion of the States of Illinois and Eastern Wisconsin as described on Exhibit A hereto (which Exhibit A corresponds to the definitions of "Eastern Wisconsin Territory" and "Chicago Territory" in the Final Judgment, except with respect to Ogle, Lee, Kendall (West of Illinois Highway 47) and Grundy (West of Illinois Highway 47) Counties, Illinois, and is referred to herein as the "Chicago Territory"). Notwithstanding the immediately foregoing sentence, with respect only to the use by Licensee of Chicago Trademark "Mrs. Karls", the Chicago Territory shall be deemed to include all of the State of Wisconsin. IBC expressly reserves from such license all rights and uses of the Chicago Trademarks outside of the Chicago Territory. IBC also expressly reserves from such license all rights and uses of the Chicago Trademarks in the Chicago Territory on products other than fresh and returned bread, buns, bread rolls and other bakery products. This license is limited to the Chicago Territory and Licensee shall not have any rights in the Trademarks which are not expressly set forth herein. IBC also reserves the right to use the Trademarks only in connection with the marketing and sale of bakery products manufactured for IBC by LBB or delivered to IBC by LBB in its thrift stores located in the Chicago Territory and the Sunbeam Territory.

(b) Effective upon the Closing Date, IBC further agrees to release all rights it may have to the Sunbeam Trademarks in the portion of the states described on Exhibit B hereto (which Exhibit B corresponds to the definition of "Central Illinois Territory" in the Final Judgment and also includes Ogle, Lee, Kendall and Grundy Counties, Illinois and is referred to herein as the "Sunbeam Territory") (collectively, the Chicago Territory and the Sunbeam Territory are referred to as the "Territory") in connection with the manufacture, sale, distribution, advertising and promotion of fresh and returned bread, buns, bread rolls and other bakery products using the Sunbeam Trademarks as set forth herein.

Section 1.2 **Chicago Transfer Date Usage**. Prior to the Closing Date, IBC hereby grants to Licensee a limited, non-assignable, non-transferable, non-perpetual, non-exclusive license to use the Chicago Trademarks for the period between the Chicago Transfer Date and the Closing Date. If the transactions set forth in the Purchase Agreement are terminated prior to the occurrence of the Closing Date, this Agreement shall immediately terminate upon termination of the Purchase Agreement.

Section 1.3 **Representation**. IBC represents that it has all requisite corporate power and authority to execute, deliver and perform this Agreement. This Agreement constitutes the legal, valid and binding obligation of IBC enforceable against IBC in accordance with its terms subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability affecting creditors' rights and to general equity principles.

**Section 1.4 Sublicense.** Licensee shall have no right to sublicense the Trademarks or the use of the Trademarks to any third party.

## ARTICLE II

## TRADEMARK OWNERSHIP

**Section 2.1 Ownership.** Licensee acknowledges and agrees that IBC is the exclusive owner of, or has the right to use, the Trademarks and all goodwill associated therewith and that IBC shall retain the full ownership interest in and to the Trademarks; the associated goodwill and all registrations granted thereon; and that all use of the Trademarks by Licensee shall inure to the benefit of and be available to IBC. Except for the rights specifically granted or licensed herein, Licensee shall have no rights to the Trademarks.

**Section 2.2 No Registration.** Licensee shall not anywhere register, or cause to be registered, any corporate logo, name or trademark consisting of, comprising or containing the Trademarks, including without limitation any registration in the United States Patent and Trademark Office.

**Section 2.3 No Contest to Title or Validity.** Licensee shall not contest the title of IBC to the Trademarks or registrations thereof or challenge the validity of this Agreement and Licensee shall not take any action or fail to take any action the result of which could reasonably foreseeably adversely prejudice IBC's interest in the Trademarks.

**Section 2.4 Other Documents.** Licensee shall execute any and all papers and documents necessary to preserve and extend the Trademarks and registrations thereof within the Territory, including any other documents required by the relevant authorities in the Territory.

## ARTICLE III

## TRADEMARK USE

**Section 3.1 Manner of Use.**

(a) Licensee shall use the Chicago Trademarks owned by IBC only in the form and manner and with appropriate legends as prescribed from time to time by IBC.

(b) Licensee shall use the Sunbeam Trademarks owned by IBC, if any, only in the form and manner and with appropriate legends as prescribed from time to time by IBC.

**Section 3.2 No Use in Corporate Name.** Licensee shall not use any of the Trademarks owned or licensed by IBC as its corporate name or title in whole or in part and shall not, without the prior written consent of IBC, alter or combine such owned or sublicensed Trademarks with other terms, or use such Trademarks in connection with any business other than as licensed hereunder.

## ARTICLE IV

## CONSIDERATION

**Section 4.1 Consideration.** As consideration for the license granted herein, Licensee has paid to IBC a fee of ten dollars ($10.00), and other good and valuable consideration, set forth in the Allocation Agreement described in Section 2.3 of the Purchase Agreement.

## ARTICLE V

## TERM AND TERMINATION

**Section 5.1 Term.** This Agreement shall commence on the date hereof and shall continue in perpetuity subject to Sections 1.2 and 5.2 hereof.

**Section 5.2 Termination.** Subject to Section 1.2 hereof, IBC shall have the right to terminate this Agreement in the event of the material breach of any of the terms hereof by Licensee; provided, however, that if, within 30 days after notice of breach, Licensee cures said breach, then the Agreement shall continue in full force and effect. A material breach shall include but not be limited to a failure of LBB to maintain the character and quality of goods sold under the Trademarks as provided for in Section 6.1 hereof. Termination upon breach shall be without prejudice to any other remedy IBC may have against Licensee for such breach.

**Section 5.3 Effect of Termination.** Upon the termination of this Agreement pursuant to Sections 1.2 or 5.2, Licensee shall cease and terminate all use of any kind whatsoever of the Trademarks. Licensee shall not replace the Trademarks with any other words, logos or phrases confusingly similar thereto.

0251711.02

- 4 -

## ARTICLE VI

## QUALITY CONTROL

**Section 6.1 Standards.** Goods sold or otherwise distributed by Licensee under the Trademarks shall be substantially of the same character and quality as the goods currently sold by IBC under the Trademarks and such present character and quality shall be considered an acceptable standard of quality. Licensee shall use raw materials, ingredients and packaging supplies of a quality at least as high and consistent with the quality previously used by IBC in connection with the same or similar products.

## ARTICLE VII

## TRADEMARK INFRINGEMENT

**Section 7.1 Claims Against Third Parties.** Licensee and IBC shall each notify the other of any actual, alleged or threatened infringement of rights under the Trademarks in the Territory by a third party promptly as it comes to the attention of Licensee or IBC, as the case may be. IBC shall have the sole discretion, at its own cost and expense, to bring proceedings involving the Trademarks in its own name and to join Licensee as a party against any third party infringing either directly or contributorily. If IBC should determine to bring such suit, all recoveries shall be retained by IBC. Licensee shall reasonably assist IBC as requested and cooperate in any such litigation at IBC's expense; provided, however, IBC shall have full control over the conduct of the suit, including the right to select counsel of its choice and enter into any settlement of the suit provided that such settlement does not materially prejudice Licensee's rights hereunder.

**Section 7.2 Claims by Third Parties.** Licensee and IBC shall promptly notify each other of all information as it comes into their possession relative to any actual or threatened infringement suit by third parties and relating to Licensee's use of the Trademarks. IBC shall have the sole right, but not the obligation, to control at its own cost and expense the defense of such suit, including but not limited to the right to select counsel of its choice and enter into any settlement of the suit provided that such settlement does not materially prejudice Licensee's rights hereunder.

## ARTICLE VIII

## INDEMNIFICATION

**Section 8.1 No Warranty For Claims By Third Parties.** IBC has the right to use and license others to use the Trademarks it owns in the manner contemplated by this Agreement; however, IBC specifically disclaims any warranty that Licensee will be free from claims of third parties with respect to the Trademarks. Licensee acknowledges that it has no right to indemnification from IBC as a result of any third party challenges to Licensee's use of the Trademarks hereunder. Subject to the preceding sentence, IBC shall defend, indemnify and hold Licensee harmless against any and all claims, demands, causes of action, judgments, cost and expenses, including reasonable attorney's fees, arising out of any willful act or omission by IBC with respect to any of its obligations under this Agreement.

**Section 8.2 Indemnification of IBC by Licensee.** Licensee shall defend, indemnify and hold IBC harmless against any and all claims, demands, causes of action, judgments, cost and expenses, including reasonable attorney's fees arising out of Licensee's manufacture, distribution, shipment, advertising, promotion, offering for sale or sale of the goods sold under the Trademarks, or any defects in such goods other than those goods supplied by IBC to Licensee, as well as related advertising and promotional materials, provided Licensee receives prompt notice of such claim, demand, cause of action or judgment and is permitted to deal with it in Licensee's sole discretion.

## ARTICLE IX

## MISCELLANEOUS

**Section 9.1 Entire Agreement.** This Agreement, together with the Exhibits and Schedules hereto and the agreements referenced herein, constitutes the entire agreement between the parties respecting the subject matter hereof and supersedes all prior written or oral agreements or understandings in variation of its terms. The Exhibits and the Schedules are deemed incorporated herein by reference.

**Section 9.2 Amendments.** Except as expressly set forth herein, this Agreement shall not be modified, altered or amended except by agreement in writing signed by duly authorized representatives of the parties hereto.

**Section 9.3 Governing Law.** This Agreement shall be governed by the statutory and decisional law of the State of Illinois, without giving effect to the conflict of law provisions thereof.

**Section 9.4** **Severability**. In the event that any part of this Agreement shall for any reason be finally adjudged by a court of competent jurisdiction or determined by a governmental body to be invalid or unenforceable, then, unless such part is deemed material by any or all parties hereto, this Agreement shall continue in effect and such part shall be excised herefrom. If any party determines that such part hereof found to be invalid or unenforceable is material to the operation or performance of this Agreement, then such party may, by written notice to the other parties, request that the parties attempt to renegotiate this Agreement to alleviate or eliminate any difficulty caused to such party by such invalidity or unenforceability.

**Section 9.5** **Waiver**. Except as otherwise specifically provided herein, no failure or delay on the part of any party hereto to enforce any provision of this Agreement or to exercise any right granted hereby shall operate as a waiver thereof unless or until the right to enforce any such provision or to exercise any such right has been waived in writing by such party. Any waiver of any provision hereof or right hereunder shall be effective only in accordance with its terms and may be restricted in any way. No waiver of any provision hereof or any right hereunder shall constitute a waiver of a continuance or reoccurrence of the failure to perform, except as provided in such waiver.

**Section 9.6** **Notices**. All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed duly given if and when delivered personally or sent by certified mail (return receipt requested), postage prepaid by overnight courier:

| | |
|---|---|
| To IBC: | Interstate Brands Corporation<br>12 East Armour Boulevard<br>P.O. Box 419627<br>Kansas City, MO 64141<br>Attention: Ray Sandy Sutton, Esq.<br>Fax: (816) 502-4126 |
| With a copy to: | Shook, Hardy & Bacon L.L.P.<br>One Kansas City Place<br>1200 Main Street<br>Kansas City, MO 64105<br>Attention: Jennings J. Newcom, Esq.<br>Fax: (816) 421-5547 |
| If to Licensee: | Lewis Brothers Bakeries Incorporated<br>500 N. Fulton Avenue<br>Evansville, Indiana 47710-1571<br>Attention: R. Jack Lewis, Jr.<br>Fax: (812) 425-7609 |

or to such other address as any party may notify the other parties in writing.

**Section 9.7 Headings.** The headings of the various articles and sections hereof are for convenience of reference only, shall not be deemed to be a part hereof, and shall not affect the meaning or construction of any provision hereof.

**Section 9.8 Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be considered one and the same agreement, and shall become effective when signed by both of the parties hereto.

**Section 9.10 Additional Documents.** Each party hereto shall execute such further papers, documents or agreements as may be reasonably necessary or desirable to effect the purpose of this Agreement and carry out its provisions.

0251711.02

- 8 -

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized representatives effective as of the date first above written.

        **INTERSTATE BRANDS CORPORATION**

By: _____
Name: Ray Sandy Sutton
Title:  Vice President, Corporate Secretary and
        General Counsel

        **LEWIS BROTHERS BAKERIES INCORPORATED**
        **CHICAGO BAKING COMPANY**

By: _____
Name: R. Jack Lewis, Jr.
Title:  President

## SCHEDULE A
## TO LICENSE AGREEMENT

The license shall cover the following Trademarks in the Chicago Territory (as modified pursuant to the footnotes):

> Butternut
> Butternut Design
> Mrs. Karl's[1]
> Gingham Design[2]
> Country Wheat
> Blue Seal
> Home Style
> Honey Wheat
> Old World[3]
> Dixie Rye
> Hearty Rye
> Fun Buns
> Sun Maid Raisin[4]

---

1. For all of Chicago Territory and also the entire State of Wisconsin.

2. For use only in connection with Butternut and Mrs. Karl's Trademarks.

3. For use on bagels only.

4. Trademark not owned by IBC, but IBC will abandon rights to use this Trademark in Chicago Territory as defined by the Sun Maid License Agreement.

## SCHEDULE B
## TO LICENSE AGREEMENT

IBC will be obligated to release or abandon rights to certain third party Trademarks in the Sunbeam Territory (as modified by the footnotes) as follows:

> Purity[1]
> Our Own[2]
> Roman Meal[3]
> Sunbeam[4]
> Hearth Farms

---

1. Not a federally registered trademark. See attached map 1 for list of counties which constitute "Sunbeam Territory" for purposes of the Trademark.

2. License only for entire States of Illinois and Wisconsin and the counties of Missouri and Indiana shown on map 1. IBC retains ownership rights.

3. See attached map 2 for counties which constitutes "Sunbeam Territory" for purposes of the abandonment of this Trademark.

4. Entire States of Illinois, Missouri, Indiana and Wisconsin constitutes "Sunbeam Territory" for purposes of abandonment of the Trademark.

0251711.02

- 11 -

MAP 1

# PURITY BAKING COMPANY



MAP 2

The area labeled "Purity Baking Company, Decatur, IL" constitutes the "Sunbeam Territory" for purposes of this map.



# EXHIBIT A
## TO LICENSE AGREEMENT

The Chicago Territory shall mean the following counties, except as modified on a label by label basis pursuant to Schedule A hereto:

The definition of Eastern Wisconsin Territory and Chicago Territory in the Final Judgment, excepting Ogle, Lee, Kendall (east of Illinois Highway 47) and Grundy (east of Illinois Highway 47) Counties, Illinois.

**EXHIBIT B**
**TO LICENSE AGREEMENT**

3

The Sunbeam Territory shall mean the following counties, except as modified on a label by label basis pursuant to Schedule B hereto:

The definition of Central Illinois Territory in the Final Judgment.